UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20008-CR-LEIBOWITZ(s)

UNITED STATES OF AMERICA

vs.

MICHAEL KARL GEILENFELD,

     Defendant.

_____/

**UNITED STATES OF AMERICA'S NOTICE PURSUANT TO
FEDERAL RULES OF EVIDENCE 413, 414, AND 404(b)**

In advance of the February 3, 2025, trial against defendant Michael Karl Geilenfeld, the United States of America hereby provides notice of its intent to introduce at trial, pursuant to Federal Rules of Evidence 413 and 414, evidence that the defendant committed other child molestation against minors under the age of 14 years and committed other sexual assaults. Alternatively, the defendant's other child molestation and other sexual assaults are admissible under Rule 404(b) to prove the defendant's motive, intent, knowledge, modus operandi, and absence of mistake or accident. Additionally, the United States intends to introduce evidence of other acts—including grooming and physical abuse of children at the defendant's orphanage— which facilitated the sexual abuse of the child victims. Because some of the witnesses who will testify about the defendant's other child molestation or sexual assaults or acts are located outside the United States, the United States respectfully requests that the Court issue an admissibility

ruling in advance of trial so that the parties may appropriately prepare. For the reasons stated herein, the proffered evidence should be admitted.[1]

## I.   FACTUAL BACKGROUND

Haiti is one the poorest countries in the world and many of its citizens experience hunger, persistent unemployment, disease epidemics, civil unrest, and gang violence. The defendant is a U.S. citizen who went to Haiti as a missionary and thereafter founded an orphanage called the St. Joseph's Home for Boys ("SJHB") in approximately 1985. Through SJHB, the defendant offered some of the poorest children in Haiti sanctuary from these conditions. Most of the residents of SJHB were extremely impoverished minor boys whose families who had either abandoned them or could no longer care for them. While at SJHB, these minor boys depended on the defendant for basic necessities that they would otherwise lack, including food, clean water, shelter, and education.

Between 1985 and 2014, the defendant served as the primary director of SJHB, where he was responsible for its daily operations and regularly interacted with the minor children who lived there. During his tenure as director of SJHB, the defendant used his position of power over these impoverished minor Haitian boys to sexually abuse them and to discourage their disclosure of this sexual abuse.

Beginning in the 1980s, the defendant has been repeatedly accused of and investigated for—both in Haiti and the United States—sexually abusing the minor boys in his care. For example, in addition to the victims identified in the Superseding Indictment, the defendant engaged in sexual acts with minor males who were as young as 9 years old by penetrating or attempting to

---

[1] This Notice contains sensitive information concerning victims of child sexual abuse. As such, the individuals discussed herein are referred to by pseudonyms. The United States will provide defense counsel the actual names of the individuals discussed in this Notice.

penetrate their anuses with his penis and penetrating their mouths with his penis. Many of the defendant's victims reported that the defendant warned them not to disclose what happened, that the defendant offered money and other benefits if the minors would engage in sexual activity with him, and that the defendant threatened them if they did not do as he instructed.

In late 2014, the defendant was arrested and incarcerated by Haitian authorities in connection with allegations that the defendant sexually abused minor boys in his care. The defendant was released from a Haitian jail in 2015. Haitian authorities issued a new arrest warrant in October 2015, but the defendant absconded to the Dominican Republic before Haitian authorities could arrest him on the new warrant.

On January 18, 2024, a grand jury sitting in the Southern District of Florida returned an Indictment (ECF No. 3) charging the defendant with one count of Traveling in Foreign Commerce with the Purpose of Engaging in Illicit Sexual Conduct in violation of Title 18, United States Code, Section 2423(b). On April 11, 2024, the grand jury returned a Superseding Indictment charging the defendant with four additional counts of Engaging in Illicit Sexual Conduct in a Foreign Place in violation of Title 18, United States Code, Section 2423(c), with 1 count for each of four specific child victims. ECF No. 19. Trial is set to begin February 3, 2025. ECF No. 30.

## II.     THE DEFENDANT'S CHARGED CONDUCT

Counts Two through Five of the Superseding Indictment involve the defendant's sexual abuse of Minor 1, Minor 2, Minor 3, and Minor 4, respectively.

### A.  The Defendant's Sexual Abuse of Minor 1.

Minor 1 began living with the defendant at SJHB in 2006 when Minor 1 was approximately 11 years old. Minor 1 lived in a series of orphanages prior to moving to SJHB and went to SJHB so that he would not have to live on the streets. After arriving at SJHB, Victim A, a minor boy,

took Minor 1 to the defendant's room where Minor 1 witnessed the defendant kiss Victim A. Victim A then left the room and the defendant kissed Minor 1, groped Minor 1, and said that he wanted to penetrate Minor 1. Minor 1 said no, but the defendant pulled Minor 1's pants down and penetrated Minor 1's anus with his penis. Minor 1 reported that he experienced bleeding from his anus after this assault. After this sexual assault, the defendant gave Minor 1 money so that Minor 1 could buy medicine to treat pain caused by the defendant's penetration of Minor 1's anus.

The defendant sexually assaulted Minor 1 a second time in or around 2009 when Minor 1 was still under 14 years old. While at SJBH, the defendant told Minor 1 to go to the defendant's room; Minor 1 reported that he felt he had no choice but to comply. Like the first assault, the defendant kissed Minor 1 and penetrated Minor 1's anus with his penis. Minor 1 reported that the defendant used lubricant on his penis and that Minor 1's anus bled after being penetrated by the defendant's penis. After this assault, the defendant gave Minor 1 money which Minor 1 used to buy medicine to treat pain caused by the defendant's penetration of Minor 1's anus.

The defendant sexually assaulted Minor 1 two more times around 2010 when Minor 1 was around 14 to 15 years old. During these two assaults, the defendant's conduct included kissing Minor 1 and penetrating Minor 1's anus with his penis. Minor 1 reported that his anus bled after these sexual assaults.

Minor 1 reported that he has been contacted by individuals who have offered him money to withdraw his reports of sexual abuse by the defendant. Minor 1 reported being fearful of the defendant.

## B. The Defendant's Sexual Abuse of Minor 2.

Minor 2 moved into SFHB in 2009 when he was 13 years old. In or around July 2009, the defendant took Minor 2 into the defendant's room under the guise of teaching Minor 2 prayers.

Instead, the defendant took off Minor 2's pants, touched Minor 2's penis with his hand, and attempted to penetrate Minor 2's anus with his erect penis. Minor 2 physically resisted the defendant's efforts and the defendant did not penetrate Minor 2's anus. Minor 2 reported that the defendant offered to take Minor 2 overseas if Minor 2 agreed to engage in sexual acts with him. Minor 2 further reported that the defendant said Minor 2's life would be "over" if Minor 2 reported the sexual assault and that the defendant would throw Minor 2 out of the orphanage.

Minor 2 was fearful of the defendant. In addition to the defendant's threats, Brunel Ezra, a close associate of the defendant, stabbed Minor 2 in the chest in 2012 while both were at SJHB. This stabbing required treatment at a hospital and left a large scar on Minor 2's chest.

**C. The Defendant's Sexual Abuse of Minor 3.**

When Minor 3 was approximately seven years old, his mother kicked him out of her house and forced him to live on his own. Haitian social services discovered Minor 3 living on the streets and took him to live at SJHB in 2006. Between 2009 and 2010, when Minor 3 was between 10 and 11 years old, the defendant groomed Minor 3 with words and physical touch, including touching Minor 1's stomach during a hug. On one occasion around 2009, Minor 3 was sleeping in the defendant's room when he was awoken by the defendant pulling Minor 3's shorts down and penetrating Minor 3's anus with his penis. Minor 3 reported that his anus was sore and bleeding afterward and that the defendant told Minor 3 not to tell anyone what had happened.

On another occasion before the January 2010 earthquake, Minor 3 went to the defendant's room to retrieve money for a taxi and encountered the defendant wearing only a towel. The defendant began discussing sexual topics with Minor 3 and then forced his penis into Minor 3's mouth. Minor 3 bit the defendant's penis and ran out of the room. Afterwards, the defendant offered Minor 3 money to engage in sexual acts; Minor 3 refused to accept the money and did not

engage in further sexual acts with the defendant. Minor 3 reported that the defendant kicked him out of the orphanage after Haitian social services investigated SJHB in 2015.

### D. The Defendant's Sexual Abuse of Minor 4.

Minor 4 began living at SJHB when he was 9 years old after his father died and left Minor 4 without a caretaker. In 2008, Minor 4 observed the defendant slapping the boys at SJHB on their buttocks. When he was approximately 13 years old, Minor 4 was mopping the floor of the defendant's room when the defendant began touching Minor 4's back and other parts of Minor 4's body. The defendant said that he would send Minor 4 to the United States when Minor 4 was older. The defendant then pulled his own pants down, showed his erect penis, and asked Minor 4 to suck his penis. Minor 4 told the defendant "don't do this to me" (or words to that effect) and the defendant asked why Minor 4 would respond that way after the defendant had explained that he would assist Minor 4 in going to the United States. The defendant then penetrated Minor 4's mouth with his penis. This sexual assault progressed to the defendant penetrating Minor 4's anus with his penis. Minor 4 reported that the defendant spit on his own penis prior to penetrating Minor 4's anus and that Minor 4's anus was painful and bleeding after the assault. Minor 4 reported that the defendant told him not to disclose what had happened and reiterated that he could do many things for Minor 4, including flying him to the United States.

Minor 4 stated that he was scared to report the sexual assault and that he believed authorities would side with the defendant if Minor 4 made a report. Minor 4 stated that Bill Nathan, a close associate of the defendant,[2] attempted to persuade Minor 4 to disclaim any abuse by the defendant, including by offering Minor 4 money to sign a letter supporting the defendant.

---

[2] Bill Nathan is a Haitian national who helped operate SJHB.

III.   **THE DEFENDANT'S OTHER CHILD MOLESTATION, SEXUAL ASSAULTS, AND ACTS**

The defendant's other child molestation, sexual assaults, and acts revolve around a central theme: the use of his position of power as director of SJHB to facilitate his sexual abuse of minor boys in his care and to discourage those boys from reporting this sexual abuse. Under this framework, the United States seeks to introduce testimony, including from the witnesses described below, that the defendant engaged in sexual acts, sexual contact, or other relevant conduct with child residents.[3]

Victim A: Victim A is expected to testify that he began living with the defendant at SJHB in late 2005 or early 2006 when Victim A was between 12 and 13 years old. Victim A reported that the defendant began touching him by patting his buttocks. Victim A reported one occasion where the defendant brought Victim A into the defendant's room under the guise of giving Victim A money. While in the defendant's room, the defendant became aggressive and began sucking Victim A's penis. The defendant penetrated Victim A's anus with his penis. During this sexual assault, Victim A attempted to physically resist but the defendant held Victim A's hands down to subdue Victim A. After the sexual assault, the defendant gave Victim A money and said that if Victim A told anyone about the assault, "something" could happen to Victim A. The defendant further stated that Victim A would not benefit from all that SJHB had to offer—including becoming a member of a traveling dance troupe—if he disclosed the sexual abuse. Victim A stated that the defendant sexually assaulted him in a similar manner multiple times and that the defendant gave him money after each assault. Victim A is expected to testify that he did not tell anyone about the sexual abuse because the defendant pressured him not to disclose and threatened to kick him

---

[3] The United States is continually assessing the evidence it has amassed and continuing to investigate leads and interview additional individuals. The United States respectfully requests leave to supplement this notice if it seeks to introduce additional evidence and witnesses falling into these categories.

out of SJHB if he told anyone.

In approximately 2015, the defendant suspected that Victim A reported the sexual abuse and the defendant asked Victim A to recant any reports. Victim A reported that the defendant's associate Bill Nathan began visiting Victim A daily and offered to pay Victim A money if Victim A recanted any report of sexual abuse.

Victim B: Victim B lived at SJHB from approximately 2008 to 2014. During his time at SJHB, the defendant told him that he could get money and go to the United States if he engaged in sexual activity with the defendant. On one occasion before the January 2010 earthquake, when Victim B was about 11-12 years old around 2008 or 2009, the defendant asked Victim B to go to the defendant's room. The defendant asked him to engage in sexual activity, Victim B complied, and the defendant penetrated Victim B's mouth with his penis. The defendant also touched Victim B's penis. The defendant solicited him to engage in sexual activity on subsequent occasions as well.

Victim C: Victim C lived at SJHB and other residences operated by the defendant beginning around 2001 when he was 7 years old. Victim C would testify that he and other children at SJHB had to greet the defendant each morning with a hug, pressing their bodies against each other; a handshake was not allowed. The staff at SJHB frequently beat the children, and he understood that if he did not want to be beaten, he had to have sexual contact with the defendant.

One day, when Victim C was approximately 9 years old, the defendant asked Victim C to go to the defendant's room; once there, the defendant unzipped his (own) pants, put ointment on his penis, and said words to the effect of, "Don't you want to travel?" Victim C responded, "Not like that." Victim C stood and tried to leave, but the defendant became forceful. The defendant pulled down Victim C's pants and penetrated Victim C's anus with his penis. The defendant

subsequently unlocked the door of the room and told Victim C not to talk or else he would be kicked out, and that if he kept what happened a secret the defendant would let Victim C travel.

There were subsequent times when the defendant solicited Victim C to engage in sexual activity with him, both implicitly and explicitly. For example, the defendant would unbutton Victim C's shirt while hugging him and make a comment about his "strong chest" or "beautiful chest." The defendant would also slap Victim C's clothed buttocks when he walked by. In 2012-2013, the defendant solicited him, and when Victim C said no, the defendant took his passport and kicked him out of SJHB. After disclosing his sexual abuse, Bill Nathan and others whom Victim C understood to be working on the defendant's behalf tried to pay Victim C to drop the complaint against the defendant.

Victim G: [4] Victim G began living at SJHB when he was 13 years old in approximately 1989 after both of his parents died. If called, Victim G may testify that the defendant sexually abused him when he was a minor at SJHB and that he did not disclose the abuse out of fear of the consequences.

Victim H: Victim H began living at SJHB in early 1996 when he was 17 years old. Victim H is expected to testify that the defendant first sexually abused him in approximately December 1996. Victim H reported that he was mopping the floor at SJHB when the defendant gave him a hug and started touching Victim H's penis without Victim H's consent. Victim H reported that, a few weeks later, the defendant invited Victim H into his room, gave Victim H gifts, and stated that Victim H "needed to sacrifice," or words to that effect. Victim H reported that the defendant then began to caress his body.

Victim H reported a third occasion in early 1997 where the defendant called Victim H to

---

[4] This notice intentionally omits reference to Victim D, Victim E, and Victim F. The United States requests leave to supplement this notice if it seeks to introduce additional evidence and witnesses

his bedroom, gave him a gift, and told Victim H that the defendant would take him to the United States. Victim H reported that the defendant then sucked Victim H's penis. Victim H stated that he reported this sexual abuse to a third party. After this report, Victim H was expelled from SJHB and became homeless.

Victim I: Victim I lived with the defendant at SJHB between 1992 and 1997 when he was between approximately 13 and 20 years old. Victim I is expected to testify that, in 1993 or 1994 when he was between 14 and 15 years old, the defendant brought Victim I to the defendant's room and kissed Victim I on the mouth. Victim I reported that the defendant told him, "if you don't want to live on the street, make the sacrifice because I'm not your dad" and "you need to sacrifice, if you want to travel," or words to that effect. Victim I reported that the defendant expelled him from SJHB after Victim I accused the defendant of being a pedophile. Victim I stated that he was homeless after the defendant expelled him from SJHB.

Victim J: Victim J began living at SJHB in 1987 when he was approximately 10 years old. Victim J is expected to testify that the defendant sexually assaulted him in 1989 when Victim J was between 12 and 13 years old. Victim J reported that the defendant invited Victim J into his room and had Victim J sit on his lap. While sitting on his lap, the defendant unbuttoned Victim J's pants, put his hand inside Victim J's pants, and touched Victim J's penis. Victim J stated he did not like being touched this way and that he was scared. Victim J reported that the defendant was smoking a substance that he suspected to be marijuana and that the defendant puffed smoke in Victim J's face, causing Victim J to lose consciousness. When Victim J awoke, he was naked on the couch in the defendant's bedroom and the defendant was penetrating his anus.

Victim K: Victim K began living on the streets in Haiti when he was approximately eight years old. Victim K met the defendant when he was nine years old and the defendant invited Victim

K to live in SJHB when Victim K was 11 years old. Victim K is expected to testify that the defendant sexually assaulted him on multiple occasions before 1989. On one occasion, Victim K was in the kitchen and the defendant came up behind him, put his hand on Victim K's nipples, pressed his clothed penis against Victim K's clothed buttocks, and said words to the effect of "I will make your life nice, I will make you comfortable if you are nice to me."

On another occasion, the defendant asked Victim K to come to the defendant's room, where the defendant began masturbating Victim K's penis. Victim K remained quiet because he felt as though he had to do comply with these sexual acts to live in the defendant's house. Victim K is expected to testify that the defendant sucked Victim K's penis and that the defendant put his penis between Victim K's buttocks on multiple occasions. Victim K stated that these sexual assaults occurred in Haiti and also in Florida when Victim K traveled to the United States with the defendant.

Victim L: Victim L first met the defendant when the defendant visited Haiti in 1983 when Victim L was approximately 10 years old. Victim L is expected to testify that the defendant shared a room with Victim L at a missionary house and that the defendant masturbated him and sucked his penis. Victim L reported that the defendant returned to Haiti in 1985 and that he lived with the defendant at SJHB. Victim L is expected to testify that, on multiple occasions between 1985 and 1990, the defendant would take Victim L to the defendant's room where he penetrated Victim L's mouth with his penis. Victim L is also expected to testify that the defendant penetrated his mouth with his penis when the defendant took Victim L to visit New Orleans. Victim L was between the ages of 12 and 17 years old at the time of this sexual abuse.

Victim M: Victim M lived with the defendant at SJHB from approximately 1986 until 1995 when he was between 10 and 19 years old. Victim M is expected to testify that the defendant

touched his penis and tried to engage in additional sexual activity with him, but Victim M told the defendant that his back hurt so he would leave him alone. Victim M reported that the defendant hit him and on one occasion put Victim M's neck between the defendant's legs and hit the back of Victim M's neck with his hand.

Victim N: Victim N met the defendant in Haiti in the early 1980s and was repeatedly sexually abused by him in Haiti and in the United States, when Victim N was approximately 9 to 14 years old. The abuse included oral and anal penetration and threats of harm if Victim N disclosed the abuse.

Witness 1: Witness 1 began living in another orphanage in Haiti operated by the defendant called Trinity House in 2009 when he was 10 years old and moved to SJHB in approximately 2012. Witness 1 is expected to testify that he observed boys enter the defendant's room at night and remain in the room alone with the defendant. He further stated that the defendant would hug and tickle boys at SJHB.

Witness 2: Witness 2 will testify that he moved to SJHB in 2006 when he was 13 years old. Witness 2 is expected to testify that he witnessed young boys entering and leaving the defendant's bedroom and heard the defendant instructing young boys to go see him in his bedroom after evening prayers. Witness 2 is expected to testify that the defendant treated boys within SJHB disparately, and that the defendant could and did expel from SJHB boys whom the defendant did not favor, forcing them to live on the streets.

Witness 3: Witness 3 moved to SJHB in 1998 when he was five years old and was expelled from the program in 2014 when he was 11 years old. Victim 3 will testify that the defendant used physical force and threats to ensure child residents' compliance, including that the defendant slapped him, threatened to put him back on the streets and that the defendant punished boys who

could not recite their prayers by kicking them out of the house. Witness 3 is further expected to testify that he saw the defendant give money to boys after they visited the defendant's room, and he saw the defendant give preferential treatment to Victim A.

## IV.   LAW AND ARGUMENT

### A. The Defendant's Other Child Molestation is Admissible Under Federal Rule of Evidence 414.

Federal Rule of Evidence 414(a) provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation," and such "evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). The rule defines "child molestation" broadly but includes "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child[.]" Fed. R. Evid. 414(d)(2)(A). The term "child molestation" encompasses charged or uncharged criminal conduct under state or federal law involving traditional notions of sexual acts with children. Fed. R. Evid. 414(d)(2).

Congress enacted Rule 414 as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub. L. No. 103-322, 108 Stat. 1796 (1994). Rule 414 is designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari); *see also* 140 Cong. Rec. S12990; David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent. L. Rev. 15, 19 (1994). The legislative sponsors of Rule 414 further noted that:

> The reform effected by these rules is critical to the protection of the

13

> public. . . [a]nd is justified by the distinctive characteristics of the cases to which it applies. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant -- a sexual or sado-sexual interest in children -- that simply does not exist in ordinary people. Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, *there is a compelling public interest in admitting all significant evidence that will shed some light on the credibility of the charge and any denial by the defense*.

140 Cong. Rec. H8991-92 (1994) (emphasis added).

In adopting these rules, Congress built upon a large body of precedent favoring a permissive approach to similar crimes evidence in sex offense cases. Many jurisdictions have recognized the need for special evidence rules to ensure fully informed decisions by juries in cases involving sexually violent crimes or the sexual abuse of children. Such jurisdictions have historically allowed such evidence through the adoption of special "lustful disposition" rules. *See* Thomas J. Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases*, 21 Am. J. Crim. L. 127, 188 (1993) (characterizing 29 states as allowing propensity evidence in some category or categories of sex offense cases). Other jurisdictions achieved similar results by interpreting standard exception categories like those found in Rule 404(b) with unusual liberality in sex offense cases. *See*, *e.g.*, *Wigmore's Evidence* § 62.2, at 1334-35 (Tillers rev. 1983) (rule against propensity evidence often not honored in sex offense cases). Furthermore, Congress recognized and intended that this approach would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception. The legislative sponsors noted:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. *The presumption is in favor of admission*. The underlying legislative judgment is that the evidence admissible

14

pursuant to the proposed rules is typically relevant and probative, and that *its probative value is normally not outweighed by any risk of prejudice or other adverse effects*. In line with this judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence. Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions. *No time limit is imposed on the uncharged offenses* . . . as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses.

140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); *see also* 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi.-Kent L. Rev. at 19.

Evidence offered under Rule 414 must generally satisfy four conditions to be admissible: (1) the defendant must be accused of a "child molestation" offense, as defined by the rule; (2) the evidence the United States seeks to admit must be "child molestation" offenses, as defined by the rule; (3) the evidence must be relevant; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *See generally United States v. Levinson*, 504 F. App'x 824, 827 (11th Cir. 2013). Evidence of other child molestation committed by the defendant, Michael Geilenfeld, satisfies all four conditions.

First, Rule 414 defines "child molestation" as a "crime under federal law […] involving contact between any part of the defendant's body — or an object — and a child's genitals or anus[,] contact between the defendant's genitals or anus and any part of a child's body[,]" and attempts to engage in such conduct. Fed. R. Evid. 414(d)(2)(C), (D), and (F). The rule defines "child" as "a person below the age of 14[.]" Fed. R. Evid. 414(d)(1). The defendant is charged with multiple violations of Section 2423 premised on the defendant touching the genitals of minors under the age of 14 and penetrating and attempting to penetrate the anuses and mouths of minors under the age of 14 with his penis. The defendant is therefore accused of "child molestation" as defined

under Rule 414.

Second—and relatedly—the evidence the United States intends to offer involves "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child[.]" Fed. R. Evid. 414(d)(2)(A). Section 2243(a) is an offense under Chapter 109A which prohibits engaging in a "sexual act" with a minor under the age of 16. "Sexual act" is defined as "contact between […] the penis and the anus […] contact between the mouth and the penis [or] the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]" 18 U.S.C. § 2246(2). Similarly, Section 2244(a)(3) is an offense under Chapter 109A which prohibits "sexual contact" with a minor under the age of 16. "Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]" 18 U.S.C. § 2246(3). The United States intends to offer evidence that the defendant engaged in sexual acts and sexual contact with other children, such as Victim A, Victim B, Victim C, Victim J, Victim K, Victim L, and Victim N, all of whom were under the age of 14 years at the time of the sexual acts and sexual contact. This evidence involves conduct which would violate Sections 2243(a) and 2244(a)(3) and is therefore "any conduct prohibited by 18 U.S.C. chapter 109A[.]" Fed. R. Evid. 414(d)(2)(A).

Third, this evidence is highly relevant. It shows that the defendant used his position of power over children in his care to facilitate his sexual abuse by gaining their compliance, offering them benefits, threatening them with expulsion if they resisted, and reducing the likelihood that they would disclose the sexual abuse. Moreover, these sexual abuses share similarities with the defendant's sexual abuse of the victims identified in the indictment. These sexual abuses involved

victims of similar backgrounds and ages. These sexual abuses occurred under similar circumstances where the defendant invited the victims into his room, offered gifts of money or travel, and either threatened to or did expel the victim from SJHB into homelessness. These circumstances suggest an overarching design that the defendant employed for over two decades to sexually abuse multiple minors in his care.

Finally, the high probative value of evidence that the defendant committed multiple other instances of child molestation under similar circumstances is not substantially outweighed by danger of unfair prejudice. The United States' evidence consists of the victims' testimony, the testimony of others who experienced similar sexual abuse, and the testimony of other persons who corroborate these accounts. This evidence does not involve the type of graphic presentation that could inflame the passions of the jury. It is no more salacious than evidence regularly admitted in courts around the country or than the evidence that will be admitted regarding the abuse of the victims in the charged counts. *See, e.g.*, *Levinson*, 504 F. App'x 824, 826 (admitting evidence that the defendant "participated in hundreds of online chats involving sex with minors, that he possessed virtual and real child pornography, that he was convicted in 1998 for sexual abuse, and that he sexually abused his daughter when she was a minor[.]"); *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001) (district court properly admitted Rule 414 testimony by adult witness that defendant charged with sexual abuse of a child had sexually abused her twenty years prior, where "[b]oth were young girls of six or seven years at the time of the offense, both were related to [defendant]; and the sexual nature of the offenses were similar"); *United States v. Cox*, 871 F.3d 479, 486 (6th Cir. 2017) ("The potential accounting of the abuse they endured by watching Defendant rape their younger sister was connected to their own suffering and therefore pertinent to the government's case. Accordingly, we find no error, plain or otherwise."); *United States v.*

*Moore*, 425 F. App'x 347 (5th Cir. 2011) (discussing over-the-clothes-touching evidence properly admitted in child pornography prosecution). Additionally, exclusion under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011). The Court should therefore admit evidence that the defendant committed acts of sexual molestation against other children, such as Victim A, Victim B, Victim C, Victim J, Victim K, Victim L, and Victim N.

**B. The Defendant's Other Sexual Assaults are Admissible Under Federal Rule of Evidence 413.**

Evidence of the defendant's prior sexual assaults of victims, including those over the age of 14, should be admitted under Rule 413. Federal Rule of Evidence 413 provides, in pertinent part:

> In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.

Fed. R. Evid. 413(a); *see also United States v. Brooks*, 723 F. App'x 671, 681 (11th Cir. 2018) (quoting *United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014)) ("The focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather than how the charges have been drafted.").

Two criteria must be satisfied for this rule to apply: "first, the defendant must be accused of an offense of sexual assault, and second, the prior act must be an offense of sexual assault." *United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009). The rule defines a "sexual assault" as

"a crime under federal law or under state law . . . involving," among other things, "(1) any conduct prohibited by 18 U.S.C. chapter 109A; (2) contact, without consent, between any part of the defendant's body . . . and another person's genitals or anus . . . (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body [or] . . . (5) an attempt or conspiracy to" do either. Fed. R. Evid. 413(d). As explained above, the defendant's charged crimes involve conduct prohibited by Chapter 109A.

In addition to engaging in other child molestation involving victims under the age of 14, the defendant also sexually assaulted multiple victims over and under the age of 14. For example, the defendant engaged in nonconsensual sexual acts with Victim G and Victim H including when they were minors. *See Rogers*, 587 F.3d at 820 ("[m]inors lack the capacity to consent, and so sexual contact with a minor is always 'without consent'" for purposes of Rule 413).

Case law in this area indicates that uncharged conduct, as well as conduct that occurred either after the charged offense, or many years prior, can be introduced. *See, e.g.*, *United States v. Schaffer*, 851 F.3d 166, 183 (2d Cir. 2017) (affirming admission of prior uncharged sexual assaults under Rule 413 in enticement prosecution); *United States v. Guidry*, 456 F.3d 493, 502–04 (5th Cir. 2006) (district court properly admitted testimony regarding sexual assault offense of which defendant was not convicted based upon the similarity of the testimony and charged conduct and the close temporal proximity); *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007) (where defendant was on trial for traveling in interstate commerce for the purposes of engaging in illicit sexual conduct, the district court did not abuse its discretion in admitting defendant's prior conviction for the attempted rape of a child, since "the similarity between the two offenses was striking").

As with Rule 414, Congress recognized and intended that this approach would make the admission of similar crimes evidence in federal sex offense cases the *norm*, and its exclusion the *exception*. *See* 140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole) ("The presumption is in favor of admission."). The Court should therefore admit evidence that the defendant sexually assaulted multiple victims, including but not limited to Victim G and Victim H.

### C. Rule 403 Does Not Bar Admission of the Defendant's Other Child Molestation and Other Sexual Assaults

Because the evidence of other child molestation and other sexual assaults is presumptively admissible under Rules 413 and 414, it must be admitted unless the defendant can demonstrate that the balancing analysis under Rule 403 weighs against admission. He cannot.

As discussed above, Rule 403 is "an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (citation and internal quotations omitted). "To determine whether the evidence is more probative than prejudicial, a district court must engage in a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009) (cleaned up).

This evidence is highly probative. The similarity between the defendant's other child molestation, other sexual assaults, and the charged offenses underscores the probative value of the evidence. *See Schaffer*, 851 F.3d at 182 (prior sexual assaults were "particularly [relevant] because of the similarities between the conduct . . . and Schaffer's alleged conduct").

The length of time between these acts does not weaken the probative value of the evidence. Rather, the defendant's persistent sexual abuse of minors in his care shows a clear pattern of sexual

20

abuse. *See United States v. LeMay*, 260 F.3d 1018, 1027–30 (9th Cir. 2001) (explaining that lapse of time since prior sexual abuse is less problematic where abuse was not an isolated occurrence); *see also* 140 CONG. REC. H8,992 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari) ("[E]vidence of other sex offenses by the defendant is often probative and admitted, *notwithstanding very substantial lapses of time in relation to the charged offense or offenses*") (emphasis added); *Brooks*, 723 F.3d at 761–762 (44-year-old familial rape allegation properly admitted under Rule 414); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (finding no abuse of discretion where district court admitted prior acts, under Rule 414, that took place over 15 years before the tried offense); *United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (same for 19 year old conviction); *Kelly*, 510 F.3d at 436-38 (admission of prior attempted rape conviction of 12-year-old warranted in prosecution for traveling in interstate commerce for purpose of engaging in illicit sexual conduct even though prior offense occurred 22 years earlier); *Gabe*, 237 F.3d at 959–60 (upholding admission of witness testimony that defendant had sexually abused victim 20 years prior to instant charge). Considering the case law, any lapses in time between the defendant's other child molestation, his other sexual assaults, and the charged offenses does not render the evidence unfairly prejudicial.

In sum, the proffered sexual abuse evidence makes plain that the defendant has an insatiable sexual interest in minors that he has repeatedly acted on, and the jury should receive the full picture of the conduct here.

### D. The Defendant's Other Child Molestation, Other Sexual Assaults, and Other Acts Are Also Admissible Under Rule 404(b).

Even if the proffered evidence of the defendant's other child molestation and other sexual assaults were not admitted under Rules 413 and 414 (though, as set forth above, it should be), the evidence should be admitted under Rule 404(b). Additionally, testimony, including by non-

charged victims Victim I, Victim M, Witness 1, Witness 2, Witness 3, that minors entered the defendant's room, that the defendant kissed and touched minors in manners that did not rise to the level of a criminal offense, that the defendant physically abused children in his care and allowed others to physically abuse the children, and that the defendant threatened to expel children from SJHB should be admitted. While the latter evidence may not be "other acts" evidence requiring a Rule 404(b) ruling, the United States offers notice its intent to offer such evidence here in an abundance of caution. This evidence demonstrates the defendant's modus operandi and plan to control children in his care and to create the conditions where the children would not resist his sexual advances or disclose sexual abuse. The evidence should therefore be admitted.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act," is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nevertheless, Rule 404(b) provides that such evidence may be admitted to prove "motive, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). Furthermore, the proffered evidence can be admitted for a "variety of other purposes." Fed. R. Evid. 404(b); *see also LeMay*, 260 F.3d at 1029 (noting that "[p]rior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*.") (emphasis in original).

Rule 404(b) is a rule of "inclusion which allows [extrinsic] evidence unless it tends to prove *only* criminal propensity." *United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004) (emphasis added) (quoting *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989)). Rule 404(b) evidence must satisfy a three-part test: (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient evidence to allow a jury to determine that the

defendant committed the other act; and (3) the evidence must pass the Rule 403 balancing test. *United States v. Cochran*, 683 F.3d 1314, 1321 (11th Cir. 2012). Here, each of the above three factors is satisfied.

The proffered evidence is directly relevant to the defendant's motive, opportunity, intent, preparation, and plan to sexually abuse minors in his care. Here, the proof of the defendant's intent is particularly critical. Count One of the Superseding Indictment charges the defendant with travel to Haiti "for the purpose of engaging in any illicit sexual conduct[.]" ECF No. 19. "A defendant who enters a not guilty plea makes intent a material issue, which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("The relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses.").

The defendant's recurrent sexual abuse of minors in Haiti demonstrates his intent in traveling there. He traveled to Haiti in search of conditions where he could use his position of power to sexually abuse children. Further, this persistent sexual abuse of minors demonstrates the defendant's sexual interest in children and thus his motive for the charged offenses. Indeed, the Eleventh Circuit clearly acknowledges the logical connection between a defendant's sexual interest in children at different points in time and the relevance of that evidence in cases involving the sexual exploitation of children. *See, e.g.*, *United States v. Gates*, 351 F. App'x 362, 367 (11th Cir. 2009) (affirming admission of evidence of defendant's prior relationship with 16-year-old boy as relevant to his intent because minor in prior relationship was nearly the same age as the purported minor at issue and defendant expressed a desire to engage in similar sexual activities with the purported minor).

Second, based on the evidence described herein, the jury could reasonably find that the defendant engaged in the uncharged bad acts. The Supreme Court's decision in *Huddleston v. United States*, 485 U.S. 681 (1988) governs the admissibility of evidence under Rule 404(b). *United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005). In *Huddleston*, the Supreme Court held that the admissibility of other act evidence under Rule 404(b) is governed by the rule of conditional relevance in Fed. R. Evid. 104(b). *Id.* (citing 485 U.S. at 689). "When determining whether there is sufficient evidence to satisfy Rule 104(b), the court is not required to make any preliminary finding that the government has proved the conditional fact." *Id.* (internal citations omitted). Instead, the court should examine all the evidence and decide whether the jury could reasonably find the conditional fact by a preponderance of the evidence. *Id.* Here, the jury could reasonably find that the defendant engaged in the uncharged acts.

Finally, and as explained above, evidence of uncharged acts satisfies the balancing test of Rule 403. In sum, evidence of the defendant's other child molestation and other sexual assaults, as well as the grooming and culture of fear that the defendant created at SJHB in order to facilitate his sexual crimes against children, should be admitted.

## V.    CONCLUSION

For the foregoing reasons, the United States gives notice of its intent to introduce at trial, under Rules 413, 414, and 404(b), the defendant's other child molestation, sexual assaults, and acts. For the reasons stated herein, the Court should admit the proffered evidence.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    */s/ Lacee Elizabeth Monk*
Lacee Elizabeth Monk
Assistant United States Attorney

24

Florida Bar No.100322
99 NE 4th Street
Miami, Florida 33132-2111
Phone: (305) 961-9427
Email: Lacee.Monk@usdoj.gov

*/s/ Jessica L. Urban*
Jessica L. Urban
Florida Special Bar ID No. A5503222
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 353-4146
Jessica.Urban@usdoj.gov

*/s/ Eduardo Palomo*
Eduardo Palomo
Florida Special Bar ID No. A5503186
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 305-9635
Eduardo.Palomo2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2024, I filed this document electronically using the

CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.

<u>*/s/ Eduardo Palomo*</u>
Eduardo Palomo
Trial Attorney