UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>24-20008-CR-LEIBOWITZ(s)</u>

UNITED STATES OF AMERICA

vs.

MICHAEL KARL GEILENFELD,

    Defendant.
_____/

**THE UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S OMNIBUS MOTION IN LIMINE AND MOTION TO COMPEL**

    This Court should deny the Defendant's omnibus motion in limine to exclude the Rule 413, 414, and 404(b) evidence and the expert testimony noticed by the Government ("Def. MIL", ECF No. 40). As further set forth herein, such evidence is admissible, highly probative, and not outweighed by unfair prejudice or other factors. As to the Defendant's "motion to disclose information pursuant to *Brady* and its progeny," *id.* at 8-9, the Government has complied, and will continue to comply, with its discovery obligations, and the Government respectfully submits that there is nothing in dispute. Accordingly, the Court should deny the Defendant's omnibus motion.

**I.**    **The Government's Proffered Rule 413, 414, and 404(b) Evidence Should be Admitted**

    As detailed in the Government's Notice Pursuant to Federal Rules of Evidence 413, 414, and 404(b) (ECF No. 37), the proffered evidence of the other child molestation, sexual assaults, and acts committed by the Defendant satisfies the conditions for admissibility. The Defendant's challenge to the testimony is quite narrow and should be rejected by this Court.

The crux of the Defendant's argument is based on the (incorrect) assumption that the Government intends to call all fourteen of the witnesses identified in the Government's Notice. *See* Def. MIL at 3 (complaining that the evidence would "likely be several times more voluminous than the evidence related to the actual charges Mr. Geilenfeld has been accused of" and result in "a series of 'mini-trials' focused on each of the eleven to fourteen . . . witnesses"). The Government does not intend to call all fourteen witnesses at trial, but rather specified each of them in its Notice in order to provide the Defendant (and this Court) with a more comprehensive understanding of the pool of witnesses from which it expects to draw, given that the discovery in this case is voluminous and that the Government has not yet finalized its witness list, and in order to demonstrate why each of these witnesses' testimony is, individually, admissible under Rules 413, 414, and/or 404(b). In short, the Government is not seeking to admit "needlessly . . . cumulative evidence," *see* Def. MIL at 4, and the testimony of these witnesses will be appropriately tailored so as not to create any "undue delay." *See id.* To the extent the Defendant is concerned with "misleading the jury" and "unfair prejudice," *id.*, a jury instruction about the purpose and proper use of the Rule 413/414/404(b) evidence will suffice. *See, e.g.*, *United States v. Calderon*, 127 F.3d 1314, 1330-1333 (11th Cir. 1997) (rejecting defendant's contention that evidence of prior crimes caused unfair prejudice, reasoning that the charged conduct "rest[ed] on the testimony of coconspirator witnesses" whose credibility was subject to serious challenge, and "[f]urthermore, any unfair prejudice that may have existed was mitigated by the district judge's limiting instruction").

As for the Defendant's conclusory assertion that testimony about abuse occurring "approximately ten years before the events outlined in the indictment" is "not relevant," Def. MIL at 4, case law is squarely to the contrary. Indeed, the Eleventh Circuit and other courts have

repeatedly affirmed the admission of evidence of a defendant's long-ago sexual abuse of uncharged victims pursuant to these Rules.  *See, e.g.*, *United States v. Brooks*, 723 F. App'x 671, 674-75, 680-81 (11th Cir. 2018) (uncharged victim's testimony that the defendant molested him 44 years earlier, as propensity evidence); *United States v. Carino*, 368 F. App'x 929, 929-30 (11th Cir. 2010) (uncharged victim's testimony that the defendant molested her 32 years prior); *United States v. Gabe*, 237 F.3d 954, 959-60 (8th Cir. 2001) (uncharged victim's testimony that the defendant molested her 20 years prior); *United States v. Meacham*, 115 F.3d 1488, 1490, 1495 (10th Cir. 1997) (uncharged victims' testimony that the defendant molested them more than 30 years before); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (uncharged victim's testimony that the defendant molested him 16-20 years prior).

So too is the evidence relevant here, as it (among other things) shows that the Defendant had the requisite intent to engage in illicit sexual conduct when he traveled to Haiti during the charged timeframe (i.e., that he did not simply form the intent to engage in illicit sexual conduct *after* he traveled, which would be a defense to Count One, but rather had had a sexual interest in children and intended to act on it for decades) and rebuts a likely defense argument that the charged victims have colluded with each other and/or with third parties to fabricate the sexual abuse allegations for various reasons.  *See, e.g.*, Def. MIL at 8-9 (suggesting that third parties have been improperly influencing the victims "to inculpate Mr. Geilenfeld").

In short, testimony that the Defendant sexually abused other children is not just "relevant" but remarkably probative, not unfairly prejudicial, and should be admitted.[1]

---

[1] *See also, e.g.*, *United States v. Kapordelis*, 569 F.3d 1291, 1312-14 (11th Cir. 2009) (affirming admission of testimony about defendant's prior extraterritorial sexual abuse of minors under Rule 404(b), in extraterritorial production trial); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (affirming admission of 404(b) evidence of other sexual abuse in extraterritorial sexual abuse trial); *United States v. McGuire*, 627 F.3d 622, 623, 626-27 (7th Cir.

Additionally, the Court should reject the Defendant's claim that the proffered testimony of witnesses who observed the Defendant's tactics to facilitate his sexual abuse of children—grooming, violence, and access to children in a bedroom—is "irrelevant." Def. MIL at 4-5. This testimony shows, *inter alia*, the Defendant's plan, modus operandi, and opportunity to engage in sexual activity with minors and thus has "any tendency to make . . . more . . . probable," Fed. R. Evid. 401, the sexual abuse of the charged victims as set forth in the superseding indictment. That the witnesses may not have seen specifically the charged victims going into the Defendant's bedroom goes to the weight of the evidence rather than its admissibility, and the Defendant's professed concern that the jury would "speculate that these individuals were sexually assaulted" or simply conclude the Defendant is a "bad person," Def. MIL at 4-5, can be properly allayed with a jury instruction about the evidence's purpose and permissible use. *See, e.g.*, *United States v. Kapordelis*, 569 F.3d 1291, 1302, 1313-14 (11th Cir. 2009) (affirming admission of 404(b) witnesses' testimony that they observed the defendant bring young males to his hotel room and give money to another young male—none of whom were the charged victims—in extraterritorial abuse/production trial, reiterating that "[e]xclusion under Rule 403 is an 'extraordinary remedy' that should be 'used sparingly'") (citation omitted); *United States v. Brimm*, 608 F. App'x 795, 797, 799-800 (11th Cir. 2015) (affirming introduction of 404(b) evidence to show the defendant's modus operandi and for other permissible purposes, reiterating that "Rule 404(b) is a

---

2010) (affirming admission of four uncharged victims' testimony that defendant—a missionary in Mother Teresa's order—sexually abused them as children, for propensity evidence under Rules 413-414 and as modus operandi under Rule 404(b), in § 2423(b) trial); *United States v. Breitweiser*, 357 F.3d 1249, 1252, 1254 (11th Cir. 2004) (affirming admission of evidence under Rule 404(b) that defendant previously engaged in sexual conduct with children, holding it not more prejudicial than probative even though it was more egregious than the charged conduct of touching the victim's inner thigh); *United States v. Gates*, 351 F. App'x 362, 364, 367 (11th Cir. 2009) (affirming admission of evidence of defendant's prior relationship with 16-year-old boy as relevant to his intent under Rule 404(b), where charged conduct involved a fictitious minor).

4

rule of inclusion" and explaining that the jury instruction mitigated the defendant's Rule 403 concerns) (citation omitted)). The Court should allow this evidence as well.[2]

## II.     The Government's Proposed Expert Testimony Should be Admitted

The Defendant correctly states the three conditions the district court must consider when performing its Rule 702 "gatekeeping" determination of the admissibility of expert testimony: whether (1) the expert is qualified to testify on the subject matter; (2) the methodology by which she reaches her conclusions is sufficiently reliable; and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, in understanding the evidence or determining a fact in issue. *See* Def. MIL at 5-6; *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). The Defendant is incorrect, however, in his barebones assertions that the proposed testimony of Professor Cécile Accilien and Dr. Sharon Cooper fails to meet this standard. To the contrary, Professor Accilien and Dr. Cooper are qualified to testify as set forth in their expert disclosures; their methodologies are sufficiently reliable; and their testimony will help the jury assess the evidence and render a just verdict.

---

[2] The Defendant's alternative, unsupported request for a "pretrial hearing where these witnesses' and victims' testimony can be taken and can be evaluated more thoroughly to determine its admissibility," Def. MIL at 5, should be denied as unnecessary and inappropriate. The Government has provided the defense with the witnesses' and victims' prior statements (to the extent these are in the Government's possession), as well as other evidence related to the proffered testimony, in the normal course of discovery, and it will continue to do so. If the Defendant (or this Court) has outstanding concerns about the expected testimony, the Government respectfully submits that a proffer can sufficiently address those concerns and questions, without needing to subject these victims/witnesses to the stress of additional court process. (For example, in response to the Defendant's concern with the language of the Government's Notice concerning Victim G—that Victim G "may testify" that the Defendant sexually abused him, *see* Def. MIL at 4—the Government can clarify that the Notice was based on the interviews and evidence-reviews the Government has thus far conducted (and produced to the defense) and that, should the Government obtain further information from and/or about Victim G before trial, it will so inform the defense.) The Defendant's request for a pretrial hearing thus seems to be nothing more than a fishing expedition and attempt to cross examine the victims/witnesses twice, and should be rejected.

### A. The Witnesses Are Qualified

As an initial matter, the Government notes that the Defendant does not challenge the qualifications of either witness, *see* Def. MIL at 5-8, and the lengthy and detailed curricula vitae submitted with their expert disclosures are more than sufficient for this Court to conclude that they are qualified to testify on the proffered subjects. *See* ECF Nos. 36, 36-1, & 36-2.

### B. The Testimony is Relevant and Helpful to the Factfinder

The Defendant contends instead that the third condition—that the testimony be relevant and helpful—is not satisfied. *See* Def. MIL at 6-8 (asserting that a victim's "reluctan[ce] to disclose sexual abuse" and the fact that "power disparities facilitate sexual abuse" are "well within the average juror's understanding"; that "the quality of Haitian record-keeping . . . [is] irrelevant to the charges in this case"; and that "the effects of anal penetration . . . is not relevant to any issue in dispute in this case"). The Court should readily dismiss the Defendant's *ipse dixit*.

This case—like so many others involving sexual abuse—is predicated on the testimony of the victims. The Defendant has vigorously denied engaging in any kind of sexual contact with children, and there is no photographic or video documentation of the abuse. The Government anticipates, based on the Defendant's past response to the allegations, that the Defendant will seek to undermine the victims' credibility by portraying them as untruthful and lacking corroboration. The proposed expert testimony addresses these concerns and will allow the jury to better assess the victims' credibility and arrive at a just verdict.

As to delayed disclosure and other counterintuitive victim responses, courts and researchers alike have repeatedly explained that "some post-abuse behavior, like delayed reporting and shifting stories, may seem counterintuitive [to jurors], so expert testimony will

allow jurors to 'evaluate the alleged victim's behavior' and 'assess . . . credibility' by understanding 'how individuals generally react to sexual abuse.'" *United States v. Zephier*, 989 F.3d 629, 635 (8th Cir. 2021) (quoting *United States v. Johnson*, 860 F.3d 1133, 1140-41 (8th Cir. 2017)).  Similarly, grooming is "poorly understood not only by the public and the media, but even by many child abuse specialists and organizational leaders."  Kenneth V. Lanning & Park Dietz, *Acquaintance Molestation and Youth-Serving Organizations*, 29 Journal of Interpersonal Violence 2815, 2822 (2014), *available at* https://doi.org/10.1177/0886260514532360.

Accordingly, courts have repeatedly admitted such testimony.  *See, e.g.*, *Zephier*, 989 F.3d at 635 (citing "almost 30 years" worth of precedent "allow[ing] this type of expert testimony"); *United States v. Hitt*, 473 F.3d 146, 158-59 (5th Cir. 2006) (continuing long practice of allowing expert testimony on grooming practices, and similarly affirming expert testimony on counterintuitive, "return-to-the-abuser behavior" of victims); *United States v. Bighead*, 128 F.3d 1329, 1330-31 (9th Cir. 1997) (holding that expert testimony about "delayed disclosure" and victim memory, without particularizing it to the child victim in the case, had "significant probative value" and did not infringe on the "jury's province to determine credibility"); *United States v. Halamek*, 5 F.4th 1081, 1088-89 (9th Cir. 2021) (following other circuits in affirming "the probative nature of expert testimony about grooming for child sexual abuse" and rejecting the defendant's argument that the proposed expert testimony "involved common sense observations that the government could have simply argued in closing": "Halamek's contention that [the grooming expert] testimony was not probative or helpful to the jury lacks merit"); *United States v. Hayward*, 359 F.3d 631, 636-37 (3d Cir. 2004) (affirming admission of expert testimony on grooming techniques of acquaintance child molesters); *United States v. Maurizio*, No. 3:14-cr-23, 2015 WL 5228031, at *2-3, 5-6 (W.D. Pa. Sept. 8, 2015)

(admitting expert testimony, in extraterritorial sexual abuse case, on "victim behavior and dynamics"—including that which may be "counterintuitive to the average juror," such as delayed disclosures and recantations—and "offender behavior" including grooming, finding it "relevant to proving the offenses charged" and "helpful to the jury"); *United States v. Williams*, No. 7:09-cr-8 (M.D. Ga. Aug. 30, 2010, ECF No. 117, at 6) (admitting expert testimony about delayed disclosure as "helpful in assisting the jury," because "the delayed disclosure phenomenon is not only not understood by laypersons, but is even not generally known amongst child psychologists who do not deal with child sexual abuse victims").

Courts have likewise found that expert testimony about foreign country conditions and culture, including power dynamics, is relevant and helpful to the jury in cases like this, where a crime occurs abroad and the victims are foreign-born. *See, e.g.*, *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480-81 (9th Cir. 1991) (affirming introduction of expert testimony regarding Hmong culture, including attitudes toward sex, as relevant to explain why the Laos-born Hmong rape victims acted as they did); *United States v. Ngombwa*, No. 14-cr-123, 2016 WL 111434, at *10 (N.D. Iowa Jan. 10, 2016) (granting government's motion in limine to admit expert testimony regarding Rwandan culture and history, to place in context the refugee crisis and immigration screening in case charging false statements to unlawfully procure refugee status).

Haitian record-keeping is relevant here, because the Government's case is based almost entirely on the testimony of the victims who were abused by the Defendant. The jury may well wonder why the Government is not presenting corroborating records that it would expect to exist—at least in the United States—were the abuse to have occurred as testified to by the victims (e.g., records from the hospital where a victim says he was treated after being assaulted;

records from a hotel where a victim says he met the Defendant). Expert testimony explaining how record-keeping in Haiti differs from that in the United States will thus assist the jury in assessing the credibility of the victims' testimony.

Finally, anal penetration could not be more central to this case, which charges the Defendant with committing illicit sexual conduct including anal penetration. ECF No. 19 (Superseding Indictment). The Defendant has denied that he anally penetrated (or otherwise engaged in sexual contact with) the victims, and the jury will thus be tasked with determining if the victims' accounts of the assaults are to be believed. As set forth in the Government's expert disclosure, "the effects of anal penetration are not well understood by laypersons," ECF No. 36, at 8, and the jury may well question whether the victims' testimony about their assaults and their physical condition thereafter is credible. Expert testimony about the effects of anal penetration will assist the jury in this determination and thus is relevant.

In sum, the proffered expert testimony meets the relevance/helpfulness prong of the expert-admissibility inquiry.

C. The Methodology is Reliable

The proffered testimony is also reliable—and the Defendant does not claim to the contrary. *See* Def. MIL at 7-8 (contending only that "a hearing to examine the reliability of [Dr. Accilien's] opinion is warranted," because her "opinions are based on her experience and study rather than scientific opinion," and "urg[ing] . . . a *Daubert* hearing . . . to determine whether [Dr. Cooper's] proffered evidence is supported by science").

The law is clear that "expert status may be based on 'knowledge, skill, *experience*, training, or education,'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702), and that "experience alone . . . may . . . provide a sufficient foundation for expert testimony." *Id.* (citation

9

omitted). In evaluating the reliability of expert opinion as part of its gatekeeping function, the court considers, "to the extent practicable," factors such as "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* at 1262. Notably, "[t]hese factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Id.* In sum, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* (citation omitted). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Id.*

As set forth in their expert disclosures, Professor Accilien's proffered testimony is "based on her decades-long experience with Haiti, including her time living, working, and visiting there; her academic and research studies, including review of publications, literature, film, and other media; and her communications with individuals in and about Haiti." ECF No. 36, at 4; *see also* ECF No. 36, at 1-2 & ECF No. 36-1 (elaborating on her experience). Dr. Cooper's proffered testimony is "based on her decades of clinical experience treating thousands of victims of child sexual abuse, her academic and scientific research, including her publications identified in her *curriculum vitae*, and her review of peer-reviewed scholarly and scientific literature concerning the sexual abuse of children." ECF No. 36, at 9; *see also* ECF No. 36, at 5-7 & ECF No. 36-2 (elaborating on her experience); *cf., e.g., Johnson*, 860 F.3d at 1139-40 (affirming that testimony regarding victim/perpetrator power dynamics, by expert with "nearly thirty years of experience

10

as a licensed social worker specializing in domestic violence and sexual assault," "rested on a reliable foundation"); *Williams* (M.D. Ga. ECF No. 117, at 5) (finding the "delayed disclosure theory" reliable, and noting that the expert had "testified that the theory has been widely tested, subjected to peer review, published, and is an accepted phenomenon according to a 'consensus' of the research as well as her own professional experience"); *supra* Section II.B (providing additional case law holding testimony of the type offered here to be admissible).

In sum, the Government's proposed expert testimony meets the requirements of Rule 702 and *Frazier*, and it should be presented to the jury.

### III. The Government Has Complied, and Will Comply, with its Discovery Obligations

The Government respectfully submits that the Defendant's request for "an order directing the government to disclose any inducements or benefits conferred or promised to the government's witnesses in connection with their testimony, whether by the government or by a third party of which the government is aware," Def. MIL at 9, may be denied as moot. The Government is aware of its discovery obligations, and consistent with the mandates of the Due Process Protections Act and Federal Rule of Criminal Procedure 5(f), the Court has previously issued an order that "confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." *See* ECF No. 15 (Minute Order); ECF No. 24 (Minute Order).

The Government made its initial discovery production in April 2024, and it has supplemented its productions as it receives additional evidence and information subject to disclosure (in addition to records and information that may not be legally required to be disclosed, but which the Government nonetheless discloses). As the Government has informed defense counsel throughout the case, the Government will continue to comply with its discovery

11

obligations. As to the Defendant's statement that, "[b]ased on information disclosed to defense counsel's investigator, the defense has reason to believe that one or both of [two self-described children's advocates] have offered inducements to any individual with a connection to St. Joseph's Family to provide testimony to inculpate Mr. Geilenfeld," Def. MIL at 8-9, the Government reiterates that those individuals are not Government employees or agents, and they are not working on behalf of the Government. The Government does not, and cannot, control what those third parties say and do. To the extent the Government is aware of any inducements or benefits made or promised to witnesses in connection with their testimony, and as required by *Brady*, its progeny, and the preexisting orders in this case, the Government will disclose that information to the Defendant.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motion to exclude and motion to compel.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:     */s/ Lacee Elizabeth Monk*
        Lacee Elizabeth Monk
        Assistant United States Attorney
        Florida Bar No.100322
        99 NE 4th Street
        Miami, Florida 33132-2111
        Phone: (305) 961-9427
        Email: Lacee.Monk@usdoj.gov

        */s/ Jessica L. Urban*
        Jessica L. Urban
        Florida Special Bar ID No. A5503222
        Trial Attorney

    Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 353-4146
Jessica.Urban@usdoj.gov

*/s/ Eduardo Palomo*
Eduardo Palomo
Florida Special Bar ID No. A5503186
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 305-9635
Eduardo.Palomo2@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 24, 2024, I filed this document electronically using the CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.

                                                      */s/ Jessica L. Urban*
                                                      Jessica L. Urban
                                                      Trial Attorney