UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **24-20008-CR-LEIBOWITZ(s)(s)**

UNITED STATES OF AMERICA

vs.

MICHAEL KARL GEILENFELD,

    Defendant.
_____/

**UNITED STATES' NOTICE AND MEMORANDUM REGARDING SENTENCING**

Defendant Michael Geilenfeld is a cunning, manipulative, and violent sexual predator. He targeted and exploited the most vulnerable children in the world: orphans and otherwise impoverished children who were desperate for food, a roof over their heads, and a chance to make something of their lives. His sexual abuse of children lasted decades, and the emotional and physical scars with which he left his victims will endure forever. His advisory Guidelines sentence is life imprisonment, capped at the statutory maximum of 210 years, and that is exactly what he should receive.

**BACKGROUND**

    I.    **The Defendant's Abuse and Exploitation of Children in Haiti**

As this Court is well aware from the weeks-long trial and extensive pretrial hearings and briefing in this case, the defendant traveled to Haiti beginning in the early 1980s and founded the St. Joseph's Home for Boys (SJHB) in 1985. *See also, e.g.*, PSR ¶ 6 (ECF No. 151). Instead of using his privilege and power as a U.S. citizen with financial resources to truly aid vulnerable children, however, he used his position to groom them, degrade them, sexually abuse them, and conceal his sinister actions. *E.g.*, PSR ¶¶ 6-55.

## II. The Defendant's Attempts to Escape Justice

Once his victims were able to disclose the abuse they had suffered, the defendant employed all sorts of measures to try to discredit them and evade being brought to justice. Among other steps, he sued individuals who alleged that he sexually abused Haitian boys and fled Haiti after a Haitian arrest warrant was issued for him, crossing the land border without inspection by immigration officials. *E.g.*, PSR ¶ 146.

## III. Procedural History

The defendant took the instant case to trial, resulting in the live testimony of 10 victims of the defendant's child sexual abuse, among other witnesses: Minor Victim 1, Minor Victim 2, Minor Victim 3, Minor Victim 5, Minor Victim 6, and Minor Victim 7 (each the subject of one of the engaging-in-illicit-sexual-conduct counts), and Victim J, Victim K, Victim L, and Victim N (each a victim of the defendant's uncharged child molestations and sexual assaults). The defendant testified in his own defense, telling the jury of his peers that he had never sexually abused a child. The jury found the defendant guilty of all seven counts against him: one count of traveling with intent to engage in illicit sexual conduct in a foreign place and six counts of engaging in illicit sexual conduct in a foreign place. ECF No. 132.

### NOTICE REGARDING THE PSR AND GUIDELINES CALCULATIONS

In preparation for sentencing, the Probation Office correctly calculated the defendant's total offense level as 43 and his criminal history category as I, resulting in an advisory guideline sentence of lifetime imprisonment, capped at the statutory maximum of 2,520 months (i.e., 30 years for each of the seven counts, resulting in 210 years). PSR ¶¶ 140, 143, 179-180. The Government submitted some objections and clarifications regarding the applicability of the JVTA assessment and statutory basis for restitution, as well as the calculation of the Sentencing

Guidelines for Minor Victims 4 and 7, in addition to some smaller points. *See* ECF No. 153.

The Government has not yet received the final PSR, and thus the objections in its prior filing remain outstanding, although they may be resolved upon issuance of the final PSR. The Government will be prepared to address any outstanding issues at the sentencing hearing.[1] To the extent that a question remains about the proper calculation of the Guidelines, however, the Government notes that the defendant's Guidelines would be at the statutory maximum *regardless of* resolution of the Government's and defendant's objections. The Government further suggests that the Court state on the record at the sentencing hearing whether it would impose the same sentence regardless of which Guidelines provisions were used, in order to clarify the record and narrow the issues in dispute for any appeal. *See, e.g.*, *United States v. Keene*, 470 F.3d 1347, 1348-49 (11th Cir. 2006) (reaffirming that "'pointless reversals and unnecessary do-overs of sentence proceedings' can be avoided if district courts faced with disputed guidelines issues state that the guidelines advice that results from decision of those issues does not matter to the sentence imposed after the § 3553(a) factors are considered") (citation omitted).

## ARGUMENT

Thorough consideration of the Section 3553(a) sentencing factors shows that this Court should impose the Guidelines sentence of 2,520 months' imprisonment, followed by a lifetime of supervised release, and order restitution to the victims. Such a sentence is not greater than necessary to reflect the gravity of the defendant's crimes, his history, and his characteristics, and meets the other 18 U.S.C. § 3553(a) sentencing factors.

---

[1] As set forth below, the Government is submitting documentation on the issue of restitution and expects the victims of the counts of conviction to speak orally at the sentencing hearing about the impact of the sexual abuse on them and their need for counseling. The Government does not otherwise expect to need to "supplement or contest the evidentiary record"

## I. Legal framework

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007); *accord Peugh v. United States*, 569 U.S. 530, 544 (2013) ("The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing."). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.'" *Peugh*, 569 U.S. at 542 (citation omitted).

This Court must also consider all of the sentencing considerations set forth in § 3553(a) and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a). These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id.*

---

as set forth in the Court's scheduling order (ECF No. 148, ¶ 4). The Government is filing the instant notice today, pursuant to the deadlines set forth in the Court's scheduling order.

## II. The Nature and Circumstances of the Offenses

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc) (quoting *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009)). "Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *Id.* at 1207 (internal quotation marks omitted) (collecting authority). "The damage to children who are the victims of sexual abuse is not limited to psychological and emotional injury; serious physical injuries often result as well." *Id.* (citing authorities).

The nature and circumstances of the defendant's child sex crimes are horrifying. He targeted the most defenseless in society—vulnerable and orphaned children in the poorest country in the Western Hemisphere—to satisfy his own sexual desires. He used his power and resources to reduce these human beings to chattel, and as the victim impact statements submitted thus far have shown (*see, e.g.*, PSR ¶¶ 64, 67), their lives will never be the same.

Without suggesting that there be any less careful consideration of the defendant's individual circumstances (which are discussed below), the Government adamantly believes that the harm of the defendant's offenses cannot be downplayed.

## III. The History and Characteristics of the Defendant

While the defendant has no prior convictions, his history and characteristics are disturbing and counsel in favor of the Guidelines sentence. By his own admission, he grew up in a stable, loving environment and was never neglected or abused. PSR ¶ 151. He then sought out missionary opportunities, ingratiating himself with the most vulnerable members of society and portraying himself as a savior, while using his resources and reputation to get access to children

5

whom he could—and did—abuse without repercussion.  PSR ¶¶ 6-47, 153.

Beyond his sexual abuse of the six victims underlying the § 2423(c) convictions, he sexually abused numerous other children—some of whom testified at this trial, more of whom did not.  *See, e.g.*, PSR ¶¶ 36-47.[2]  Suffice it to say, the defendant's crimes of conviction are a fraction of his sexual predation.

Apart from his sex crimes, the defendant physically and emotionally abused the boys entrusted to his care.  As Minor Victim 1 recounted at trial, they were "treated like animals."  As Witness 4 testified—and the defendant himself admitted on the stand—the defendant punished children by forcing them to sit on the roof of an outhouse for hours.  When Minor Victim 6 disclosed a problem with the condition of the water at SJHB, the defendant physically assaulted him.  Minor Victim 2 was stabbed by the defendant's associate.  And these are just some of the examples disclosed at trial.

Furthermore, the defendant used his cunning to rake in huge amounts of money and support to fund and continue operating SJHB, despite decades of outcries of abuse.  That the defendant was able to manipulate not just vulnerable "street children" but dozens of educated, grown Americans who allowed this house of horrors to continue unchecked is chilling and speaks to his dangerousness.[3]

---

[2] Victim J, Victim K, Victim L, and Victim N each testified at trial about their being sexually abused as a child by the defendant.  Victim L also testified at trial about witnessing the defendant sexually abuse Victim D as a child, as the defendant lay between the two children and sexually abused each of them.  Victim H (who was on the Government's trial-witness list but ultimately not called) is expected to speak orally at the sentencing hearing on May 23, 2025.  Prior statements by other former SJHB residents who have disclosed sexual abuse and assault by the defendant (e.g., Victim E, Victim I, Victim M, Victim O, Victim Q, Victim R) are also available, should the Court wish to review those statements.

[3] *See, e.g.*, Letter from SJHB visitor Diane Albright in Support of Michael Geilenfeld (Apr. 23, 2025) (ECF No. 152) (contending, even after a jury found the defendant guilty based on the first-hand, sworn testimony of the victims and the defendant, that the defendant is "not . . .

6

## IV. The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment

"There can be no keener revelation of a society's soul than the way in which it treats its children." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010) (attributing quote to Nelson Mandela). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted). To reflect the seriousness of this crime, those who perpetrate this evil must be punished severely.

Indeed, the victims in this case have already been subjected to a lifelong scar worse than any punishment the defendant could now receive. The Government requests that the Court impose a sentence that takes into account the full impact of the crime on the victims, and consider the views of the victims who have come forward with their own statements.

Moreover, Congress's intent to treat child sex crimes severely, and its concern with below-Guidelines sentences, is evident in statutes such as 18 U.S.C. § 3553(b)(2), which permitted courts to sentence below guideline ranges for such offenses only in very limited circumstances. Although § 3553(b)(2) is no longer a mandatory limitation, in light of *Booker* concerns, the importance of sentencing courts' consideration of Congress's legislative judgment remains.

In sum, a Guidelines sentence in this case reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment.

---

a threat," "has devoted his life to serving God and helping others," and "we would all be better off with [the defendant] . . . outside of prison").

> **V.     The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment**

This Court must take the opportunity to impose a sentence that sends a message to potential future offenders who seek to exploit positions of trust to victimize vulnerable children in impoverished countries. *See, e.g.*, *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) ("[G]eneral deterrence is a critical factor that must be considered and should play a role in sentencing defendants."); *Irey*, 612 F.3d at 1193 ("General deterrence is one of the key purposes of sentencing, and the district court abused its discretion when it failed to give that matter its proper weight.") (citation omitted).

The defendant is unfortunately not the only sexual predator to sexually abuse vulnerable orphans in Haiti under the auspices of philanthropic or religious missions. For example, between 1995 and 2011, an American man sexually abused multiple boys at a shelter he operated in Haiti where he provided housing, food, schooling, and amenities to children whose families could not afford to care for them. *See United States v. Carter*, 776 F.3d 1309 (11th Cir. 2015). And regrettably, similar examples abound. *See United States v. Perlitz*, No. 3:09-cr-00207 (D. Conn.) (defendant sexually abused multiple male orphans whom he befriended and recruited to attend a boarding school he operated in Haiti); *United States v. Pye*, No. 1:17-cr-20205 (S.D. Fla. 2017) (defendant operated orphanage in Haiti and sexually abused minor girls in his care); *United States v. Arbaugh*, No. 5:17-cr-00025 (W.D. Va. 2017) (missionary sexually abused multiple young boys in Haiti for nearly a decade); *Bollinger v. United States*, 2019 WL 5076390, at *3 (W.D.N.C. Oct. 9, 2019) (religious minister who traveled to Haiti to sexually abuse vulnerable street children after "providing them and other local children with food and clothing").

The sentence in this case must send a loud message that the sexual exploitation of children is intolerable, regardless of whether the child is in the United States or a third-world country, and that the illicit rewards a motivated sex offender may reap from his conduct are *not* worth the severe consequences. *See generally United States v. Park*, 938 F.3d 354, 368 (D.C. Cir. 2019) ("If Americans believe that traveling to a particular foreign country includes the opportunity for unregulated, . . . illicit sexual conduct, they may travel to that country [and abuse children] when they otherwise would not . . . .") (citation omitted). General deterrence thus counsels the sentence requested.

As to this defendant specifically, the defendant engaged in vile crimes over the course of decades, without detection or action by those closest to him. He continues to shirk responsibility for his crimes, and many of his victims remain fearful of him today. Imprisonment for the remainder of his natural life will best protect his victims and the public from further crimes. *See generally Irey*, 612 F.3d at 1214-16 (discussing recidivism concerns and noting "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does").[4]

In sum, while a Guidelines sentence will effectively incapacitate the defendant from sexually abusing minors for the rest of his life, such a sentence is also necessary to deter those who would intend to engage in similarly heinous criminal conduct.

**VI.     The Need to Avoid Unwarranted Sentencing Disparities**

A Guidelines sentence also avoids unwarranted disparities and is not greater than necessary to accord with the purposes of sentencing under 18 U.S.C. § 3553(a). *See, e.g.*, *Irey*,

---

[4] The Government nonetheless requests that, if the defendant is ever released from prison, he be on supervised release for the remainder of his life, with conditions of supervised release including (but not limited to) the requirement that he comply with the mandates of the Sex Offender Registration and Notification Act (SORNA). *See generally* PSR ¶¶ 193-228.

9

612 F.3d at 1220-21 (providing extensive string cite of cases affirming decades-long sentences for child sex offenders); *United States v. Rodriguez*, 589 F. App'x 513, 513-14 (11th Cir. 2015) (affirming life sentence for sex trafficking minors and adult); *United States v. Foster*, 209 F. App'x 942, 943-45 (11th Cir. 2006) (upward variance to life imprisonment for defendant who engaged in sex acts with victim over the course of four years beginning when she was under 12 years old).

Of course, the question for this Court is not what sentence was appropriate in other cases, but what sentence is appropriate for this defendant. That the Guidelines sentence in this case is lifetime imprisonment (capped at the statutory maximum of 2,520 months) reflects, most fundamentally, the inhumanity of the defendant's decades of abuse and cover-up. The cited cases reinforce that a Guidelines sentence is the appropriate sentence for this defendant.

## VII. Restitution

18 U.S.C. § 3663, which was in effect at the time of the defendant's crimes of conviction, provides that "[t]he court, when sentencing a defendant convicted of an offense under [Title 18] . . . may order . . . that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A).[5] More specifically, the court may order the defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings

---

[5] As set forth in ECF No. 153, defendants convicted of § 2423(b)-(c) violations are, in some instances, subject to *mandatory* restitution pursuant to 18 U.S.C. § 2429. However, § 2429 was not enacted until 2018—i.e., after the defendant's crimes—and the Eleventh Circuit has held that restitution is a penalty implicating the Ex Post Facto Clause. *See, e.g.*, *United States v. Siegel*, 153 F.3d 1256, 1259-60 (11th Cir. 1998). The Supreme Court recently granted certiorari to address the circuit split over whether restitution is indeed penal and subject to the Ex Post Facto Clause. *See Ellingburg v. United States*, No. 24-482, 2025 WL 1020364 (Apr. 7, 2025). In light of current law, the Government intends to rely on 18 U.S.C. § 3663 (with its cross-reference to § 3664) as the basis for restitution in this case, but it respectfully reserves the right to seek restitution pursuant to other provisions if and when the law allows.

related to the offense." § 3663(b)(4).  Additionally, "in the case of an offense resulting in bodily injury to a victim," the court may award "an amount equal to the cost of necessary medical and related professional services . . . relating to physical, psychiatric, and psychological care" and "reimburse the victim for income lost by such victim as a result of such offense."  *Id.* § 3663(b)(2).

"[I]n determining whether to order restitution under this section," "the court . . . shall consider—(I) the amount of the loss sustained by each victim as a result of the offense; and (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."  *Id.* § 3663(a)(B).

In *United States v. Fuentes*, the Eleventh Circuit "discuss[ed] the proper procedures for determining restitution when a defendant alleges that []he is unable to pay."  107 F.3d 1515, 1531 (11th Cir. 1997).  Among other points, it explained that "[t]he defendant bears the burden of persuasion" on this issue and that "[t]he defendant carries this burden when the court finds that the defendant more likely than not will be unable to pay full restitution."  *Id.*  "Although a sentencing court may order restitution even if the defendant is indigent at the time of sentencing, it may not order restitution in an amount that the defendant cannot repay."  *Id.* at 1529; *see also id.* ("A district court abuses its discretion when it orders restitution in an amount that it finds the defendant is not likely to be able to pay.").  That said, the court may consider the credibility of the defendant's claims concerning his financial resources, including whether "the defendant has secreted assets or concealed a source of income (for example, a family member who provides the defendant with financial assistance)."  *Id.* at 1532.  "If the defendant shows to the satisfaction of the sentencing court that it is more likely than not that []he cannot pay full restitution at the time

11

of sentencing, the sentencing court must fashion a restitution order that accounts for [his] ability to pay," *id.*, and "restitution even in a small amount is favored" over complete "declin[ation] to order any restitution in light of the defendant's financial condition." *Id.* at 1532 n.32.

The victims of the counts of conviction have each requested restitution. *See, e.g.*, PSR ¶¶ 60-68. The Government anticipates that they will speak at the sentencing hearing about, *inter alia*, their need and desire for counseling to deal with the trauma they suffered as a direct and proximate result of the crimes of conviction. The Government also submits the attached document (Exhibit 1) setting forth average counseling costs in the geographic regions where the victims are currently living.

Although the defendant has professed not to have financial resources at this time, the Government submits that the Court should consider his past access to significant funding sources—*see, e.g.*, PSR ¶ 171 (receipt of $170,000 inheritance in 2010); *United States v. Geilenfeld*, 1:24-mj-12 (D. Colo. Jan. 25, 2024) (ECF No. 8) (motion filed by counsel retained by the defendant, reporting millions of dollars awarded to the defendant and "Hearts with Haiti," the "501(c)(3) corporation servicing Mr. Geilenfeld's missions in Haiti"); Letter from Rev. Douglas Hill (Jan. 29, 2024), 1:24-mj-12 (D. Colo. ECF No. 13-5) (referencing "our support" for the defendant and the defendant's receipt of "money" purportedly for "serv[ice] to the poor")— and the continued support he garners from fellow Americans involved with SJHB. *See, e.g.*, Letter from Diane Albright (ECF No. 152); *cf.* PSR ¶ 172 (showing $155.51 in defendant's commissary account and no liabilities). The Court should issue a restitution award supported by § 3663.

12

## CONCLUSION

Michael Geilenfeld is an exploitative predator whose numerous victims will forever live with the scars of what he did. For the reasons set forth above, the United States requests that the Court sentence the defendant to the Guidelines term of incarceration (30 years per count, for a total of 210 years' imprisonment), followed by a lifetime term of supervised release, with restitution ordered to the victims of his crimes.

Respectfully submitted,

HAYDEN O'BYRNE
UNITED STATES ATTORNEY

By: */s/ Lacee Elizabeth Monk*
Lacee Elizabeth Monk
Assistant United States Attorney
Florida Bar No. 100322
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132-2111
Telephone: (305) 961-9427
Email: lacee.monk@usdoj.gov

*/s/ Jessica L. Urban*
Jessica L. Urban
Florida Special Bar ID No. A5503222
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, DC 20005
Phone: (202) 353-4146
Email: Jessica.Urban@usdoj.gov

*/s/ Eduardo Palomo*
Eduardo Palomo
Florida Special Bar ID No. A5503186
Trial Attorney

                                              Child Exploitation and Obscenity Section  
                                              Criminal Division  
                                              U.S. Department of Justice  
                                              1301 New York Avenue NW  
                                              Washington, DC 20005  
                                              Phone: (202) 305-9635  
                                              Eduardo.Palomo2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2025, I filed this document electronically using the CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.

                                                */s/ Jessica L. Urban*
                                                Jessica L. Urban
                                                Trial Attorney